No. 39.—WILLIAM DOUGHERTY, plaintiff in error, *vs.* THE WESTERN BANK OF GEORGIA, defendant.

[1.] In an action against the maker of a promissory note, or the acceptor of a bill of exchange, or against a bank upon a bank note, all payable generally on demand, it is not necessary to aver and prove a demand, the suit itself being a sufficient demand.

[2.] Nor is a demand necessary to charge the maker of a note or acceptor of a bill of exchange payable on demand at a particular place, and it need not be averred and proven; but in that case, the defendant may plead readiness to pay at the place stipulated, or damages sustained by himself in consequence of the neglect or omission to make the demand, and upon proof of his plea, the plaintiff shall not recover costs and damages, and the defendant shall be exonerated to the extent of the damages which he has sustained.

[3.] In case, however, of a bank note payable on demand, at a particular time and place: *Held*, that demand at the place is necessary to a suit against the bank at the time designated, or afterwards, and must be averred in the declaration, and proven on the trial. The place must be stated in the note, with distinctness and precision: *Held*, that a note payable *at Rome*, is a note payable generally.

[4.] The Statute of Limitations does not apply to bank bills—they are by consent of mankind and the course of business, considered as money.

Assumpsit, in Floyd Superior Court. Tried before Judge LUMPKIN. February Term, 1853.

This was an action brought in 1851, against the Western Bank of Georgia, on sundry of their notes, or bank bills. On the trial, the plaintiff offered in evidence two twenty dollar bills, one of which read as follows:

The Western Bank of Georgia promises to pay Thos. Pullum or bearer, on demand, twenty dollars. Rome, Jan. 31.
    (Signed,)              WM. SMITH, Pres't.
    (Countersigned,)      R. A. GREEN, Cash'r.

The other bill offered, was the same, save that it was dated July 13, 1840, and payable " at Rome."

To the admission of these bills in evidence, defendants objected.

1st. Because no demand of payment of said notes is averred or proven by the plaintiff.

2d. Because the Statute of Limitations bars the plaintiff's right of action on said notes—more than six years having

elapsed since the date thereof, and no new promise to pay being averred or proven.

Which objections the Court sustained, and the plaintiff suffered a non-suit, and excepted to the decision of the Court.

C. DOUGHERTY, for plaintiff in error.

UNDERWOOD and McDONALD, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The action was brought against the Western Bank of Georgia, upon sundry notes or bills of that bank; and upon the trial, the plaintiff tendered in evidence two of these bills, one of which was payable generally on demand, and the other on demand at Rome. Both of them were barred upon their face by the Statute of Limitations. To their going in evidence, it was objected, *first*, that there was no allegation of demand of payment in the declaration, and no proof of the same. The Court sustained the objection, and the plaintiff excepted. The defendant in error holds that by the Common Law, the maker of a promissory note, and the acceptor of a bill of exchange payable generally on demand, or on demand at a designated time and place, are not liable but upon demand, and that allegation and proof of demand, are conditions precedent to recovery. He also holds, that bank bills are governed by the rule which applies to promissory notes and acceptances. Leaving the identity of bank bills in legal character with promissory notes and acceptances, so far as this question is concerned, out of view for the present, I proceed to inquire whether, in our Courts, it is necessary to aver and prove a demand in order to charge the maker of a promissory note, or the acceptor of a bill of exchange, when the note or bill is payable generally on demand at a specified time and place. I assume what is not controvertible, that the liability of an acceptor is the same with that of the maker of a note. One of the bank bills in this case, is payable generally on de-

mand. What then, I inquire, first, is the rule as to the maker of a note payable generally on demand? It is that no demand is necessary for any purpose, other than that which is made by the action. The law deems a note of this sort, to admit a present debt to be due to the payee, payable at all events, whenever and by whomsoever presented for payment, according to its purport. If a note be payable at sight, or at ten days after sight, or in ten days after notice, or on request, or on demand; in all these and the like cases, the note will be held valid and payable at all events, although the payee may die without having presented the note for sight, or without having given any notice to, or made any request or demand upon the maker for payment. I do not understand that at the Common Law, as administered in Great Britain and the United States, there is any contrariety of opinion or conflict of decision, relative to the doctrine thus stated, on this branch of the case. So far then, as concerns the bank note payable generally, upon Common Law principles, or to speak more accurately, upon the principles of the law merchant, the Court erred in excluding it because demand was not averred and proven. *Story on Prom. Notes,* §29. *Chitty on Bills,* 156, (8th edition.) *Dixon vs. Nuttall,* 1 *Cromp. Mees. and Rose,* 307. *S. C.* 6. *Car. and Payne R.* 320. 4 *Tyrwh. R.* 1013. *Clayton vs. Gosling,* 5 *Barn. and Cress.* 360. *Rumball vs. Ball,* 10 *Mod.* 38. *Bayley on Bills,* 402, (5th edition.) *Chitty on Bills,* 590, (8th edition.) *Ibid,* 608, 609.

[2.] A different rule obtains in the case of a note payable on demand at a designated place ; the case of the other bank bill offered in evidence here. As late as the year 1820, the law as to the liability of the maker of a promissory note, or of the acceptor of a bill, thus payable, was without controversy unsettled. In the great case of *Rowe vs. Young,* upon appeal to the House of Lords, in the year 1820, reported in 2 *Brod. & Bing.* 165, 6 *Eng. C. L. Reps.* 83 ; it was settled. In that case, the King's Bench had ruled, that in an action against an acceptor in favor of an indorsee, payable two

months after date, at Sir John Penings & Co. bankers, London, an averment of demand of payment at the house of Sir John Penings & Co. two months after date of the bill, was not necessary to charge the acceptor, and need not be averred. The House of Lords reversed the judgment. Eight of the twelve Judges were for affirming the judgment of the King's Bench, and four for reversing it. Among the latter, were found two of the greatest names of English judicial history ; *Eldon* and *Redesdale.* Lord *Eldon,* in his opinion to the Lords, admitted that up to that time, the law of the case was not to be considered as settled. He says, " that the Court of the King's Bench has been of late years in the habit of holding such an acceptance as this to be a general acceptance, with what the Judges of that Court call an expansion, or direction, or an engagement which introduces not a qualified promise, but a sort of courtesy—a kind of accommodation between the parties—in addition to the effect of the general acceptance ; to which accommodation or courtesy, however, they hold, that the holder of the bill is not at all bound to attend." He also says, " on the other hand, the Court of Common Pleas is in the habit of holding that such an acceptance as this, is a qualified acceptance, and that the contract of the party is to pay at the bankers, and of holding it as a matter of pleading that presentment at the place stipulated must be averred, and that evidence must be given to sustain the averment." Upon the authority of this case, it seems that the King's Bench had made a distinction between a promissory note payable at a particular place, and an acceptance payable at a particular place, upon the ground that the stipulation of payment at a particular place in case of a note, being in the body of the note, is a part of the contract. In the case of a bill, the stipulation to pay at a particular place, being in the acceptance and not in the body of the bill, that Court held, that it was not a part of the contract. Whilst therefore, they held that in the case of the acceptance, the demand was not necessary, yet in the case of the note it was necessary. Lord *Eldon* gives to this distinction the benefit of his annihilating doubt. These state-

ments, derived from the case of *Rowe and Young*, sufficiently exhibit the state of the law in 1820. It is very manifest that in the Courts of Great Britain at that time, it was unsettled. No uniform rule up to that time had obtained. That none had obtained is also manifest by a careful review of the previous cases. The Lords, constituting the highest tribunal, settled a rule, and that was, that when an acceptor is sued upon a bill payable at a particular time and place, demand at the place must be averred and proven, the place stipulated being a part of the contract. Whilst the eight Judges and the King's Bench, denied this to be the rule of pleading and of proof on the part of the plaintiff, yet they held that the stipulation to pay at a place designated, was for the benefit of the maker and acceptor, and that they, to avail themselves of the advantage of a failure to present, must plead and prove that they were with means ready to pay, and that such place and proof would protect them from all costs and damages. Their doctrine was, that the note or acceptance was an undertaking to pay at all events, and that the stipulation to pay at a designated place, was for the convenience of the maker and acceptor, to be complied with by the holder at the peril of a loss of costs and damages, if upon plea it was made to appear that the defendant was ready at the place *to meet his engagement.* The doctrine was, that his liability to pay the bill or note, was perfect by the contract, but that he was not in default unless demand was made according to his stipulation. The consequence of a failure to demand, was not a discharge from the debt, but a discharge from liability to costs and damages. Indeed whatever damage the maker or acceptor could, upon plea and proof show himself to have sustained by reason of the note or bill not being presented, would be a discharge to that extent. So that it is not now a question but that if a note is payable at bank at a time specified, and it appears by the plea and proof, that the maker had at that time funds *in* bank sufficient to pay it, and that the bank has since failed, and that there was no demand at the bank, he would be fully discharged. The year after the decision of *Rowe and Young* in the

Dougherty *vs.* The Western Bank of Georgia.

House of Lords, the matter was taken up by Parliament, and it was enacted, that an acceptance payable at a banker's or other specified place, without adding the words " and not otherwise elsewhere," should be deemed a general acceptance of the bill to all intents and purposes, so that no presentment or demand of payment at such banker's or other specified place, was necessary to be made in order to charge the acceptor. This Statute does not embrace notes, and whilst therefore, it settles a rule as to acceptances, it leaves the law as I have before stated it as to notes.   The rule very generally in the United States is, that as to the acceptor of a bill of exchange and the maker of a promissory note, payable at a bank or other specified place, no presentment or demand of payment need be made at the specified place on the day when the bill or note becomes due, or afterwards, in order to maintain a suit against the acceptor or maker, and of course, that no averment of that fact in the declaration, or proof of it on the trial is necessary; But that the omission or neglect is matter of defence for the maker or acceptor.   And if by the omission or neglect he has sustained damage, he will be exonerated from liability to the extent of that damage.   This doctrine goes upon the grounds that the acceptor and maker are original promissors; that they have contracted to pay a sum certain; that that sum is due and payable at all events, and universally, and that the omission of a duty agreed to be performed by the holder, does not discharge their debt, but leaves him liable to the consequences which are exonerative on the part of the maker or acceptor from costs and damages.   It was affirmed and expounded with a searching analysis of the cases, English and American, by the Supreme Court of the United States, in the case of *Wallace vs. McConnell,* 13 *Peters' S. C. Rep.* 136.   It came before the Supreme Court of New York first in the year 1809, in the case of *Fodden & Slater vs. Sharp,* (4 *Johns. R.* 183,) but was more maturely considered by that Court, in 1819, in *Woolcott vs. Van Stanwood,* 17 *Johns. R.* 248.   In the latter case, Chief Justice *Spencer* pronounced an opinion, which alone, ought to give him position among the ablest jurists of the

world. The inquirer after knowledge upon this question, need go no farther than to that opinion. I deem it folly to undertake a review of the cases, with that opinion before me. The gleaning would be very unprofitable in a field swept by so masterly a reaper. The doctrine was recognized afterwards in New York, in *Caldwell vs. Cassede*, 8 *Cow.* 271 ; in Virginia, in *Watkins vs. Crouch & Co.* 5 *Leigh*, 522, *and Armistead vs. Armistead*, 10 *Leigh*, 512 ; in Maryland, in *Bowie vs. Duval*, 1 *Gill. and Johns.* 175 ; in Massachusetts, in *Rugles vs. Patten*, 8 *Mass. R.* 480 ; in New Jersey, in *Weed vs. Houten*, 4 *Hals. N. J. R.* 189 ; in Tennessee, in *McNairy vs. Bell*, 1 *Yerger*, 502 ; and in *Mullherin vs. Hanum*, 2 *Yerger*, 81. See also 13 *Pick.* 465 ; 15 *Ibid*, 212 ; 21 *Ibid.* 310 ; 17 *Mass.* 389 ; 15 *Martin*, 423 ; 1 *Black. Ind. R.* 328 ; 2 *McLean's R.* 125 ; 1 *Sumner's R.* 478 ; 4 *Pike*, 592 ; 4 *Conn.* 465 ; 13 *Ibid*, 358 ; 3 *Ark. R.* 389. It is true, that some of the States have adopted the rule of the House of Lords ; Louisiana for example. 15 *Martin's R.* 424 ; 10 *Lou. R.* 208. And the two great American Judges and commentators, *Story and Kent*, favor the English doctrine. Judge *Story* dissented from the opinion of the Supreme Court, in *Wallace vs. McConnell*, (13 *Peters* 136,) although he did not make public his dissent. See *Story on Prom. Notes*, 287, *note*. In *Piquet vs. Curtis*, he affirmed the decision of the House of Lords, saying, "that the decision of the House of Lords in the great case of *Rowe vs. Young*, settled the question as to inland bills, upon principles which strike my mind as irresistible." 1 *Sumner*, 478. Chancellor *Kent* admits that the American decisions are, as I have before stated them, very generally, but declares his own opinion thus : " If a bill of exchange, though drawn generally, be accepted, payable at a particular place, it is a special or qualified acceptance, which the holder is not bound to take ; but if he does take it, the demand must be made at the place appointed and not elsewhere. This is the plain sense of the contract, and the words *accepted payable at a given place*, are equiva-

Dougherty *vs.* The Western Bank of Georgia.

lent to an exclusion of a demand elsewhere." 3 *Kent's Com.* 99, *and note v.*

Thus have I endeavored to present the true state of the law upon this question, so far as regards private notes and bills of exchange, both in England and in our own country; not because it was important to this case, but because of its importance to the commercial world generally. We adopt the American doctrine. Because we think that it is in accordance with the weight of authority in England; because it has been settled as the law of the Courts of highest authority in our Union, and because we believe it to be sound in policy, and best calculated to promote the equity of such contracts, and to effectuate the intention of the parties.

[3.] Our next inquiry is this: is the rule thus declared applicable to bank bills? We think that the rule of the commercial law applicable to a private note, or to a bill of exchange payable generally on demand, is applicable to a bank bill payable generally on demand, and that is, that averment and proof of demand are not necessary in order to charge the bank which issues it. The suit is the demand, and in such a case the plaintiff is entitled to receive his costs and damages, although the bank has been at all times ready and able to pay. 6 *Shep.* 240. By stipulations for no time and place for the redemption of her bills, she is liable to suit at any time. That is her contract with the holder of her bills. She may however, stipulate that her notes shall be paid at a place certain, and in that event, we are disposed to hold a different rule from that laid down in regard to private paper of like character. In that event, we hold that a demand at the place specified, will be preliminary to suit, and of course ought to be averred and proven. Instead of throwing upon the defendant the burden of pleading and proving readiness to pay at the place specified, and giving him, upon such plea and proof, the benefit of a discharge from costs and damages, as in case of notes and bills, we hold that a plaintiff must make demand, at the peril of having his suit dismissed, who seeks to recover upon such a bank note. "A failure to make demand at the

time, (if time is also specified,) will not discharge the bank, for the demand may be made afterwards. We are disposed to give the bank the opportunity of redeeming her bills before she is liable to suit, to make the right of action to depend upon the demand by the holder, and the default of the bank in not paying at the time of the demand. And upon the suit, after demand and refusal to pay, the plaintiff will be entitled to recover his costs and damages. This rule as to bank bills, payable on demand at a designated place, we adopt, upon the ground of public policy; and it may be made to apply to all future issues of all the banks of the State, for there is nothing to prevent all the banks from making their bills payable at a particular place. The public are interested in this question, as well as stockholders and billholders. Bank bills subserve the purposes of money in the ordinary dealings of the people. They constitute the circulating medium of the country. They constitute its currency. To preserve that sound, is a paramount object of interest and of duty, with all departments of the Government. Inasmuch as that is indefinitely diffused, consisting of a vast number of bills of various denominations, and in the hands of the people at divers, remote and unascertainable points; it is unreasonable to hold the bank bound to go to the holder with a tender to redeem; or to hold it in default if it does not make the tender. On the other hand, it is no unreasonable requirement to constrain the holder to present the bills at the place designated, before suit. It is his interest not to demand redemption, so long as he feels that the notes are sound; because it is his interest to maintain them in circulation, and thereby preserve the credit of the bank. And why should he sue when the object of a suit can be accomplished by a demand? To avoid demands, and thus maintain their issues in circulation, is the policy of the banks. This policy is best promoted by prompt payment, when demands are made. It is therefore a reasonable presumption that banks able to pay, will promptly pay upon demand. The credit of a bank is as delicate as the honor of a lady. Upon that credit, is more or less dependent every interest of property, industry

and trade.    It would not, therefore, be wise to subject it to be impaired by unnecessary suits, instigated it may be, by the cupidity of private citizens, or the lust of rival institutions. Whilst we thus guard the interest of banks, and through them, the interests of the public at large, it is necessary to look also to the interest and convenience of individuals.    The holder should be notified with *definiteness and precision,* of the place where he is required to make demand.    It is not enough to leave him to infer that he must make a demand at the counter of the bank.    For although its locality is fixed usually by law, and may be a matter of public notoriety, yet it may not be in fact known to him.    He should be informed on the face of the bill, not in general terms, but by a precise designation.    One of the bills in this case, is payable at Rome.    That is not sufficient. Like *Imperial Rome,* our *Georgia Rome* is said to sit upon seven hills.    Upon which of these, a plain man from some distant hamlet or farm house is expected to make demand, might be difficult for him to determine.    And when he has made a demand, as best he may, it may become a question of legal contestation, whether he has made it in the right place.    It should have been made payable at the banking house of the institution at Rome, or at the house of A. B. & Co. at Rome, or at some place, so clearly described as to leave no uncertainty as to its identification.    This bill is therefore a bill really payable generally on demand, and so we rule.    We hold therefore, as to both the bills, that the Court erred in excluding them upon the ground that no demand was averred or proven.

   [4.] It was objected to the admissibility of these bank bills in evidence, farther, that upon their face they were barred by the Statute of Limitations.    The Court sustained this objection. also.    More than the statutory term had expired, commencing at the respective dates of the bills.    Upon exception to this ruling, we are now to determine whether our Statute of Limitations applies to bank notes, in favor of the bank issuing them.    We are quite confident that the bank is not protected by the lapse of the statutory term, commencing with the date

of the note, as the Court below held, and that as a general rule, the Statute has no application to bank notes. The reason is, in the language of Lord *Mansfield*, in *Miller vs. Race*, " that these notes are not like bills of exchange, mere securities or documents for debts, nor are so esteemed ; but are treated as money, in the ordinary course and transactions of business, by the general consent of mankind." 1 *Burrow*, 457.

Whilst bank notes occupy, for some purposes, the position of securities, yet in addition, they are considered as, and subserve the purposes of money. Lord *Hardwick*, in *Southcoat vs. Watson*, speaking of notes of the Bank of England, says, " it has been said that these ought to be considered only as a security for money ; but I am of opinion they must be taken according to the common usage and notion of bank notes, which are always considered as cash, and made payable to bearer." 3 *Atk. R.* 232. See also, 12 *Wend. R.* 101. *Bullard vs. Bell*, 1 *Mason's R.* 252. *Sollomons vs. the Bank of England*, 13 *East. R.* 135, *note*. *Story on Prom. Notes*, §501. They are payable on demand, by the authority of the charter. *Prince*, 131. They are negotiable by delivery ; they pass in a bequest of the testator's money or cash. 1 *Scho. and Lefr.* 318, 319. 11 *Vesey*, 662. Possession is *prima facie* evidence of property in them. *Chitty on Bills*, 523. 2 *Camp. R.* 5. 1 *Camp. R.* 551. The holder is not affected by the fraud of a previous holder in obtaining them, unless he is in privity with him. 13 *East. R.* 135. They are never overdue, and not liable to any equities between the bank and parties who have subsequently received them or between intermediate parties. *Story on Prom. Notes*, §501. These qualities fit them for currency, and some of them, distinguish them from the mere evidences of a debt ; they are not money by authority of law, but are considered so by usage and the course of business, and by the consent of the people. They are issued for the purpose of being used as money by the banks; and the State is a party to the consent that they shall be so considered, because the power to issue is a grant from the Legislature.

Dougherty *vs.* The Western Bank of Georgia.

Thus made money practically, it would destroy their monetary character, to apply to them in their character of securities for the payment of money, a limitation. If the bank is protected by a limitation, then is that protection an injury, for it would have the effect of preventing the circulation of a bill for a term longer than six years. Let that be understood to be the law, and inevitably almost every bill issued would be returned once in six years. A protracted circulation, which is an object so desirable to banks, would thus be impossible. How can a limitation be applied to that which, without much perversion of truth, may be said to be like *Melchisedeck*, without beginning of days or end of life. It has no beginning on its face,-for its date is no evidence of the time when it was issued. It may bear date to-day and may be issued to-morrow or next year ; or it may be issued to-day and returned to-morrow, and re-issued the next day. Or it may not be issued at all until after it is barred by time commencing to run from its date. If it could be barred at all, it would seem that the starting point of the Statute ought to be the time of its issue. And how shall the world so know that, as to exercise a necessary diligence by suing within time. Nor has it an end of life, because it is never overdue. If, as Judge *Story* says, it is never overdue, no matter when issued or how often re-issued, but is always an immature representative of a legal tender, when shall the Statute commence to run ? Shall it be said from the time of a demand and refusal to redeem ? If so, then an insolvent bank, by which I mean a bank which is unable to redeem its bills, is upon a better footing than one whose credit is good—that is to say, the former is protected by the Statute and the latter is not. Whatever of virtue there may be in that idea, we shall not now determine, as such determination is not made necessary by this case. We determine that a bank note is not barred by the lapse of the statutory term commencing at its date, and that generally the Statute of Limitations has no application to bank notes.

Let the judgment on all the points be reversed.