FARMERS NATIONAL BANK OF ANNAPOLIS *vs.* CLARENCE
H. VENNER & others.

CLARENCE H. VENNER *vs.* FARMERS NATIONAL BANK
OF ANNAPOLIS.

Suffolk.    March 5, 1906. — September 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Bills and Notes. Maryland. Conflict of Laws. Evidence,* Proof of foreign law.
*Pledge. Conversion.*

In this Commonwealth the rule, that the holder of a promissory note which is payable at a particular time and place can maintain an action on the note against the maker without showing a demand or presentment at the place named, applies also to a note which is payable at a particular place on demand, and the presentation of such a note and a personal demand on the maker in a State other than that in which the place named for payment is situated are sufficient, if any demand is necessary before suing on the note.

In an action on a promissory note payable on demand against the maker, it appeared that the note was dated and apparently was made in the city and State of New York, that it was given in renewal of a note held by a firm doing business at Baltimore in the State of Maryland, was delivered to the plaintiff, a bank organized under the laws of the United States and doing business at Annapolis in the State of Maryland, at its usual place of business in Annapolis, and was made payable at the office of the firm doing business in Baltimore. There was evidence that the note was presented personally to the defendant and that a demand was made upon him for its payment in the city of New York. There was no evidence of a presentation or demand at the office of the firm in Baltimore which was named as the place of payment. There was evidence that by the law of the State of Maryland a demand at the office of the firm in Baltimore · was not necessary to enable the plaintiff to maintain its action. No evidence was introduced as to the law of the State of New York. *Held,* that the contract was governed by the law of Maryland or the law of New York; that in the absence of evidence as to the law of New York it was presumed to be the same as the common law of this Commonwealth; and that in either case no demand at the place named for payment was necessary.

Where bonds are pledged as collateral security for the payment of a promissory note which provides that the holder on non-performance by the maker of his promise may sell the collateral or any part of it " in such manner as the holder hereof may deem proper, without notice, at any stock exchange, or at public or private sale, at the option of the holder hereof, and with the right on the part of the holder hereof to become purchaser thereof at such sale," and where upon default in payment of the note the holder, after actual and ample notice to the maker of the time and place of the sale, sells the bonds held as collateral by a proper auctioneer at a proper place at one of the auctioneer's regular auction sales, and bids in the bonds at a price very much less than other bonds of the same issue were sold for before and after the sale, and the person who bids in the bonds for the holder is the only bidder, these facts show no ground for setting aside the sale and do not constitute a conversion of the bonds by the holder of the note in thus purchasing them.

A sale of bonds pledged as collateral security for the payment of a promissory note under a power of sale in the note is not invalidated by the fact that the bonds were advertised as six per cent bonds whereas the rate of interest had been reduced to five per cent, if the reduction in the rate of interest had taken place before the bonds were pledged and the pledgor never had caused them to be stamped as five per cent bonds, although he had called the attention of the pledgee to the reduction in interest and had suggested to the pledgee that it should have the bonds properly stamped as five per cent bonds, and if there is nothing to show that the sale was affected adversely by advertising the bonds as six per cent bonds, and it appears that six per cent bonds of the same issue were sold at auction by the same auctioneer before and after the sale in question for the same price as the five per cent bonds, and that both the pledgee and the auctioneer were justified in believing that it would make no difference whether the bonds were advertised and sold as six per cent bonds or as five per cent bonds.

MORTON, J.   These two actions were tried together before a judge of the Superior Court sitting without a jury.

The first is an action of contract by the plaintiff bank as the

holder of a certain promissory note, against the defendants as makers, to recover the balance alleged to be due after the sale and application of the collateral. The note is dated " New York City, May 14, 1892," and is payable on demand after date to the order of the makers at the office of Wilson, Colston and Company, Baltimore, and is indorsed by the defendants. The writ is dated May 13, 1898, the last day before the action would have been barred by the statute of limitations. The plaintiff is a banking association organized under the laws of the United States and having its usual place of business at Annapolis in the State of Maryland. The defendants formerly were co-partners doing business in New York City under the name of C. H. Venner and Company. Personal service was made in this State on the defendant Venner, but no service was made on either of the other two defendants. The firm of C. H. Venner and Company was dissolved July 31, 1892, and the assets became the sole property of the defendant Venner.

The second action is tort for the alleged conversion of $26,000, par value, of the bonds of the American Water Company of Omaha, Nebraska, pledged as collateral to secure the payment of the above note. The note provided, amongst other things, that the holder might sell the collateral or any part thereof on non-performance of his promise by the maker " in such manner as the holder hereof may deem proper, without notice, at any stock exchange, or at public or private sale, at the option of the holder hereof, and with the right on the part of the holder hereof to become purchaser thereof at such sale." It also contained a provision that " in case of depreciation in the market value of the security hereby pledged, . . . a payment is to be made on account, or additional approved security given, upon demand, so that the market value of the security shall always be at least ten per cent (10%) more than the amount unpaid of this note. In case of failure to do so, this note shall be deemed to be due and payable forthwith, . . . and the holder hereof may immediately reimburse himself by sale of the security in the manner provided for above." The note is signed " C. H. Venner & Co." and the words " Due on demand " immediately precede the signature. There was evidence tending to show, or from which it could have been found, that the note and bonds were

presented to the defendant Venner in person at his office in New York City and a demand for payment was made. There also was evidence that a demand was made upon him for the payment of $5,000 on account, and for additional collateral under circumstances which justified the latter according to the terms of the note. Neither of the demands thus made was complied with. There was no evidencè of a presentment or demand at the office of Wilson, Colston and Company in Baltimore, or that there were funds there to meet the note if it had been presented. The collateral was sold through the firm of A. H. Muller and Son in New York City and was bid in for the bank at a price, except as to one bond, very much less, as there was testimony tending to show, than other bonds of the same issue were sold for before and after the sale in question. This constitutes the conversion complained of. It is conceded, or, at least, is stated in the bill of exceptions as a fact, that A. H. Muller and Son were proper auctioneers, and that the place where the bonds were sold was a proper place to sell them.

The judge found for the plaintiff in the first action in the sum of $24,865.26, and for the defendant in the second action. The cases are here on exceptions by the defendant Venner to the refusal of the judge to give certain rulings requested by him and to the finding that was made.

We see no error in the rulings or refusals to rule, or in the finding that was made.

The defendant Venner contends in the first place that no action can be maintained on the note because no demand was made for its payment at the office of Wilson, Colston and Company in Baltimore. It is settled in this State, both at common law and recently by statute, and by the weight of authority in this country, contrary to the law in England, that, where a note or bill of exchange is payable at a particular time and place, no demand or presentment at the place named is necessary in order to entitle the holder to maintain an action upon the note or bill against the maker or acceptor. *Ruggles* v. *Patten,* 8 Mass. 480. *Carley* v. *Vance,* 17 Mass. 389. *Payson* v. *Whitcomb,* 15 Pick. 212. *Wright* v. *Vermont Ins. Co.* 164 Mass. 302. R. L. c. 73, § 87. For a collection of cases see Dan. Neg. Instr. (3d ed.) § 643; 1 Pars. Notes & Bills, (1st ed.) 305 *et seq.;*

4 Am. & Eng. Encyc. of Law (2d ed.) 373. We see no valid distinction between a note payable on time at a particular place and a note payable on demand at a particular place. No demand is necessary before suit, where a note is payable generally on demand, and as we have seen no demand is necessary when a note is payable on time at a particular place. It seems to us that the fact that both circumstances are found in the same note cannot operate to change the rule and render a demand necessary when it would not otherwise be required. *McKenney* v. *Whipple*, 21 Maine, 98. *Gammon* v. *Everett*, 25 Maine, 66. *Haxtun* v. *Bishop*, 3 Wend. 13. *Montgomery* v. *Elliott*, 6 Ala. 701. *Dougherty* v. *Western Bank*, 13 Ga. 287. *Bowie* v. *Duvall*, 1 Gill & J. 175.

We think, therefore, that the refusal of the judge to rule as requested, that in order to maintain the action the plaintiff was bound to prove a demand at the office of Wilson, Colston and Company and that a refusal of a demand to pay the note at any other place did not constitute a default in the payment of the note, was correct, and that the judge was right in ruling, as he did, that a sufficient demand was made though not made at the office of Wilson, Colston and Company in Baltimore. The note is dated and apparently was made in New York. But it was given in renewal of a note previously held by Wilson, Colston and Company and was to be paid in Baltimore, and, it fairly may be inferred, was delivered to the plaintiff bank at its usual place of business in Annapolis. It must be regarded, therefore, either as a New York or Maryland contract. If it is to be regarded as a Maryland contract then the decisions by the highest court in that State which were put in by the plaintiff bank would seem to show, so far as they bear upon the question, that a demand at the office of Wilson, Colston and Company was not necessary in order to enable the plaintiff to maintain its action. *Bowie* v. *Duvall*, 1 Gill & J. 175. No evidence was introduced as to the law of New York, and in the absence of such evidence it is to be assumed that the law of that State is the same as the law of this. *Hazen* v. *Mathews*, 184 Mass. 388.

The remaining question relates to the sale of the collateral. The defendant asked the judge to rule " that the relation of the

Farmers National Bank holding the collateral pledged as security for the payment of the note declared upon and the makers of said note was that of trustee and *cestui que trust;* that the Farmers National Bank was in duty bound and has the burden to prove that when it sold said collateral to itself it paid, and has since accounted to the makers of said note for the full value thereof." The judge gave the first clause and refused the second. The defendant's contention is in substance that the plaintiff bank did not exercise that care in the sale of the collateral which in view of the relation that existed between it and the makers it was bound to exercise, and he seeks to hold the plaintiff bank accountable for the amount which he contends should have been received. We assume, without deciding, that this defence, which is in the nature of an equitable defence or remedy, is open to him in these proceedings, (*Jennings* v. *Moore,* 189 Mass. 197,) but we see no ground on which it can fairly stand. The collateral was sold November 8, 1893. There was ample evidence that the defendant Venner had been notified of the intention of the plaintiff bank to sell the collateral if the note was not paid or the $5,000 that was called for was not provided, or if the additional collateral demanded was not furnished. On October 31, preceding the sale, a notice of the date and place of sale was left at his office, by the Chemical National Bank of New York, acting for the plaintiff bank, and could have been found to have been received by him. On November 2, the plaintiff bank also sent him a notice of the date and place of sale, and on November 8, the day of sale, another notice of the time and place of sale was left by the Chemical National Bank at the defendant's office. It did not appear whether these last two notices were in fact received by the defendant before the sale. But as already observed there was evidence warranting a finding that he had previously received actual notice of the date and place of sale. There also was evidence, though not perhaps so satisfactory as it might have been, warranting a finding that notice of the sale was advertised in the New York Times, the Evening Post, the Journal of Commerce, and the Tribune. It was conceded that A. H. Muller and Son, through whom the bonds were sold, did the largest auction business of securities in New York City, and also, as already observed, that they were proper auctioneers,

and that the place where the bonds were sold, which was at one of the regular auction sales of A. H. Muller and Son at the New York Real Estate salesroom, 111 Broadway, was a proper place. We do not see any ground on which it can be successfully contended that there was a lack of proper care and diligence on the part of the plaintiff bank in the sale of the collateral. The fact that the bonds were sold for very much less than bonds of the same issue had been sold for previously and were sold for subsequently, and the further fact, if such was the fact, that Mr. Quinlan, who bid off the bonds for the plaintiff bank, was the only bidder do not invalidate the sale. There is nothing to show that other bidders were not present, and mere inadequacy of price is not of itself sufficient ground for setting aside a foreclosure sale. *Austin* v. *Hatch*, 159 Mass. 198. *Stevenson* v. *Dana*, 166 Mass. 163. *Fennyery* v. *Ransom*, 170 Mass. 303. The note provided expressly that the pledgee might purchase at any sale of the collateral, and there is nothing, therefore, in the fact that the plaintiff bank was the purchaser to invalidate the sale. Neither do we think there is anything in the fact that the bonds with one exception never had been stamped as five per cent bonds but were advertised and sold as six per cent bonds which they originally were. They had been made five per cent bonds before they were pledged by the defendant, but he had never caused them to be stamped as such. And though he had called the attention of the plaintiff to the reduction in interest, and had suggested that it have the bonds properly stamped, i. e. stamped as five per cent bonds, there is nothing to show that he did anything more, or that he was not content that the bank should hold them and deal with them as six per cent bonds though they were in fact five per cent bonds. Nor is there anything to show what caused the bonds to sell for the price for which they did; or that the bank or its agents had or should have had any reason to suppose that the sale would be adversely affected, if it was so affected, if the bonds were advertised as six per cent bonds instead of five per cent bonds, or that it was the duty of the bank to cause them to be stamped as five per cent bonds. There was uncontradicted testimony that six per cent bonds of the same issue were sold at auction by the same auctioneers before and after the sale in question

for the same price as the five per cent bonds, and both the bank and the auctioneers may well have supposed that it would make no difference whether the bonds were advertised and sold as six per cent or five per cent bonds. What rights or property the plaintiff bank acquired or became entitled to under the reorganization of the water works by virtue of the possession and ownership of the bonds cannot of course affect the validity of the sale.

It is to be observed, that although the defendant Venner had information of the sale shortly after it took place, and wrote to the plaintiff bank protesting against it, he took no steps to have it set aside until the bank sued to recover the balance due it, nearly six years afterwards.

A question as to whether the plaintiff was entitled to interest was raised at the trial by the defendant, but it has not been pressed and we therefore treat it as waived.

The result is that we think that the exceptions should be overruled.

*So ordered.*

*F. H. Nash,* (*A. F. Clarke* with him,) for Venner.
*H. E. Bolles & B. D. Barker,* for the Farmers National Bank.