## KREVAIT et al. v. TUROVER.

### No. 193.

Municipal Court of Appeals for the District of Columbia.

Aug. 7, 1944.

Jacob N. Halper, of Washington, D. C., for appellants.

Irving B. Yochelson, of Washington, D. C. (Solomon Grossberg, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellants were indebted to appellee in the sum of $6,084.19 for materials used by appellants in the construction of houses. Appellants were unable to pay appellee and negotiations between them led to the mak-ing of a written agreement, the interpretation of which is involved in this appeal.

The agreement provided that certain improved real estate should be conveyed by appellants to a trustee, that the property should be sold and the proceeds applied to payment of the indebtedness due appellee. It was anticipated that a part of the proceeds of sale would consist of promissory notes payable in instalments and secured by second deeds of trust on the property; and the agreement provided that appellee in accepting the notes as payment on the indebtedness should take them at a discount of 3% of their face value multiplied by the number of years required for maturity of the notes. Thus, a note which would not be paid in full for ten years would be accepted at a 30% discount.

Appellee received practically no cash from the sale of the property but received three second trust notes in the aggregate sum of $8,200.00. He brought suit for $1,-613.01, alleging this balance was due, after deducting payment for repairs on the houses and brokers' commissions, and taking the discount on the notes. At the time of suit he held two of the notes on which instalments had been and were being collected. The maker of the third note had anticipated payment in full at a discount of approximately 5% of the balance then due.

Appellants not only denied there was any balance due but claimed that appellee had been overpaid. The court directed a verdict in favor of appellee for $1,009.06.

There is no dispute between the parties as to the amount of the indebtedness, the amount of notes and cash received by appellee, or the correctness of the credits claimed by appellee for repairs and commissions. The dispute concerns the interpretation of their written agreement. It is the appellants' contention that the agreement was in the nature of a mortgage to secure payment of the indebtedness, that the second trust notes were in effect collateral placed with the appellee to insure payment of his claim; and that if the discount on the notes is allowed to stand, the contract is usurious.

With respect to the claim of usury, we do not understand that it is usurious to purchase a promissory note at a discount or to accept in payment of a debt a promissory note at less than its face value.[1]

1 Cf. McNeill v. Lilly, 65 App.D.C. 210, 82 F.2d 620; Metropolitan Loan & Trust Co. v. Schafer, 44 App.D.C. 356.

There is nothing in the agreement or the evidence indicating that it was a cloak or screen for a usurious loan.[2] Appellants owed appellee money which they could not pay. It was not usury for appellants to give and appellee to receive in payment of the debt promissory notes at a discount. Even if we assume that appellee drove a hard bargain and demanded an unusually high discount, it still did not make the agreement illegal.

Appellants argue that the agreement of necessity was in the nature of a mortgage because it provided that in case the proceeds from the sale of the properties exceeded the amount of the debt appellants were entitled to be paid back such excess, and in case of a deficiency they were liable to pay such deficiency. Appellants' argument, reduced to its simplest form, is that the second trust notes were taken by appellee not in payment of his debt but as security therefor. We do not so interpret the agreement. Its terms are too long to be set forth in this opinion but it plainly provides that the proceeds of the sales, whether cash or notes, should be delivered to appellee in "payment of the indebtedness" due him. The notes were to be accepted at a discount but it is clear that the discounted value of the notes was to be received in payment of the indebtedness.

At the time of making the agreement, the houses had not been sold and it was not known at what price they would sell; neither was it known whether the proceeds would be in cash or second trust notes. Therefore, neither the form nor amount of the proceeds was then known. The proceeds might be more than enough to pay the indebtedness or might be less than the amount required. This uncertainty led to the provision that the appellants would be entitled to the excess, if any, and liable for the deficiency if such should occur. This provision, however, did not convert the agreement into a mortgage or make the notes collateral to the indebtedness.

We think the trial court correctly construed the agreement as one providing for application of the discounted value of the notes in payment of the debt and making appellants liable for any balance not thus paid. After crediting the agreed value of the notes and the cash received, a balance remained unpaid. Appellee was entitled to judgment therefor.

Affirmed.

---

2 Cf. Hill v. Hawes, — U.S.App.D.C. —, 144 F.2d 511.