**McDONALD et al. v. STONE.**

No. 1169.

Municipal Court of Appeals
District of Columbia.

Argued Jan. 14, 1952.

Decided Feb. 25, 1952.

Joseph A. Kaufmann, Washington, D. C. (Thomas E. Lodge, Washington, D. C., on the brief), for appellants.

Ralph A. Cusick, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, HOOD, Associate Judge, and BARLOW, Associate Judge of the Municipal Court, sitting by designation.[1]

CAYTON, Chief Judge.

As part of a transaction in which they bought a house in nearby Maryland, appellants Mr. and Mrs. McDonald executed a second trust note for $3450 to the order of Philip B. Key who was the broker in the transaction. Key endorsed the note to Sligo Hills Corporation, the builders of the house, and that corporation in turn endorsed it in blank. Through settlement at a title company it was negotiated to appellee Matthew X. Stone. After the note had been paid off, Mr. and Mrs. McDonald sued Stone charging that he had in fact loaned them only $2760, and that the difference between that amount and the $3450 called for by the note constituted usury under Article 49 of the Maryland Code of Laws. Stone defended on the ground that he had never made a loan to the McDonalds, and that he had in good faith purchased the note at a discount. Sitting without a jury, the trial court found for defendant, and plaintiffs have brought this appeal. Their general contention is that the judgment was contrary to the evidence and contrary to law.

Thus the question before us narrows down to this: Did the trial judge err in failing to rule as a matter of law that the transaction was a direct loan by Stone to the McDonalds rather than a pur-

1. Code 1940, Supp. VII, 11–771.

chase of the note at a discount? We have held that it is not usurious to purchase a note at a discount. Krevait et al. v. Turover, D.C.Mun.App., 39 A.2d 207. See also McNeill et al. v. Lilly, 65 App.D.C. 210, 82 F.2d 620. There are no Maryland cases to the contrary. Indeed Article 49 of the Maryland Code on which appellants rely expressly protects one who in good faith has purchased negotiable paper.[2]

The uncontradicted evidence was that Stone had never met McDonald until more than two years after the transaction. Plaintiff Joe McDonald himself testified that in order to help finance the purchase of the house the broker Key promised to obtain a loan for which he and his wife would make a second trust note for $3450 and would obtain $2760 net. He admitted that he did not know who the person was who put up the $2760 and that the note was signed by himself and his wife and endorsed by the broker to the seller, Sligo Hills Corporation. He said that a few days later he received a payment book showing that Stone was the owner of the note and that payments should thenceforth be made to Stone. He also admitted that he had never had any dealings with anyone other than the seller, Sligo Hills Corporation, and the broker Key.

There is no dispute that the broker Key contacted a man named Zirwes who was a real estate broker in Baltimore and who in turn interested Stone in the purchase of the note. There was in evidence a letter which Zirwes wrote to the title company to the effect that he had a client who would purchase a $3450 second trust on the property for the net amount of $2760. Also in evidence was a letter from Stone to the title company transmitting a check for $2760 for the purchase of the note in question. Neither Stone nor Zirwes was present at the settlement at the title company.

■ From the evidence as we have just summarized it, we think the trial judge was justified in concluding, as he apparently

did, that the transaction was not a usurious loan of money but that Stone had bought the note in good faith. The fact that he paid 20% less than the fact amount of the note does not of itself taint the transaction as usurious. Metropolitan Loan & Trust Co. v. Schafer, 44 App.D.C. 356; McNeill et al. Lilly, 65 App.D.C. 210, 82 F.2d 620; Krevait et al. v. Turover, D.C.Mun.App., 39 A.2d 207.

■ Nor is there anything compelling in the fact that in the note the printed words "deferred purchase money" were X'd out by typewriter, leaving the face of the note to read "given as money loaned." In view of the various circumstances we have described, we think it cannot be said that this description changed the transaction between the McDonalds and Stone, the ultimate holder of the note, into a direct loan between them. Nor does such a result follow from the fact that the note was made and the settlement completed on the same day. This was one of the circumstances to be weighed with the other facts in the case, but it did not require a ruling in favor of plaintiffs.

■ Arguing from another approach, appellants say that though Stone had no actual notice that he was making a loan directly to the McDonalds, such notice should be imputed to him "because the title company, who acted as his special agent, in attempting to carry out his instructions, had notice of the facts." As to this contention there is also no compelling evidentiary support for appellants' position. It is elementary that the existence of an agency is a question of fact, P. M. Barger Lumber Co. v. Whitehouse, 9 Cir., 182 F.2d 775, and that the burden of proving the agency is upon him who asserts it. Troietto v. G. H. Hammond Co., 6 Cir., 110 F.2d 135; Swift v. White Oak Coal Co., 44 App.D.C. 159.

Directly applicable to this situation is the ruling in Clemson v. Best, 174 Wash. 601, 25 P.2d 1032, 1033. There it was said, "Nor do we think that the lender makes

---

2. No plea of usury shall be available against any legal or equitable assignee or holder of any bond, bill obligatory, bill of exchange, promissory note or other negotiable instrument, where such assignee or endorsee or holder shall have received

the same for a *bona fide* and legal consideration, without notice of any usury in the creation or subsequent assignment thereof. Annotated Code of Maryland, Flack, 1939, Article 49, Section 2.

the broker *his* agent by the mere fact that he turns the money over to the broker to be transmitted to the borrower, and accepts a note and mortgage in which he is designated as payee and mortgagee. These are facts and circumstances which should be taken into consideration in determining whose agent the broker is, but in neither case are they conclusive." Though it is common knowledge that title companies are usually employed by the purchasers of property, the record does not disclose who engaged the services of the title company in this case. There was no evidence at all that Stone employed the title company for any purpose. We conclude that under the evidence the trial judge was not required to rule that the title company was the agent of Stone.

The case has doubtful and perhaps even suspicious aspects. But viewed in its entirety the evidence was such that either one of two different conclusions might reasonably be drawn from it. That being so it cannot be said that the ruling of the trial judge was "plainly wrong or without evidence to support it." Code, 1940, Supp. VII, 11–772. To repeat what was said in Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9, 10, "if the testimony is not sufficient to show that the trial court's decision is necessarily right, it wholly fails to show that it is necessarily wrong * * *." From this it follows that the judgment should be affirmed.

Affirmed.

HOOD, Associate Judge (concurring).

In my opinion there are many facts in this case strongly indicative of usury. First and foremost, plaintiff received by way of credit in payment for his house the sum of $2,760 for which he eventually paid defendant $3,450 plus 6% interest. In the second place, the note was dated the same date the settlement took place and I think it can be assumed that the two endorsements on the note were made the same day because the credit was made on that day. In other words, it appears to have been one transaction. Certain pertinent questions in the case stand unanswered. Defendant says he made no loan but instead purchased a note. From whom did he purchase? Why was the note made payable to Key, the broker? Why did Key endorse the note to Sligo Hills Corporation? Was Key ever the owner of the note? Did the corporation become the actual owner of the note? Did the corporation and plaintiff agree that the price of the property should be increased when it was learned that plaintiff would have to give a second trust note as part payment? Did the corporation take the note as part payment for the house and then sell the note at a discount to defendant? At whose instruction was the note marked as given for "money loaned."

The issue in this case is whether defendant made a bona fide purchase of a note at a discount or whether under the guise of buying a note he actually made a direct and usurious loan. The facts in the case were not fully developed and somewhat reluctantly I reach the conclusion that since the burden of proving usury was on the plaintiff, it was permissible for the trial court to find that plaintiff did not sustain that burden. Accordingly I concur in the result of the court's opinion.