### ELLIOTT et al. v. SCHLEIN.

#### No. 1463.

Municipal Court of Appeals for the District of Columbia.

Argued March 22, 1954.

Decided April 23, 1954.

Foster Wood, Washington, D. C., for appellants.

Herman Miller, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

In the year 1949 Mr. and Mrs. Elliott were in financial difficulties and their home was being advertised for sale under foreclosure. They succeeded in saving their home by obtaining two new loans on it, $6,000 secured by a first deed of trust and $3,000 secured by a second deed of trust. The second trust loan was secured through the services of one D. Patrick Williams to whom the second deed of trust note was made payable. Williams endorsed the note to Morris J. Schlein. The note was eventually paid. In the meantime, Mr. Schlein, Mr. Elliott and Mr. Williams died. This action was commenced by Mrs. Elliott in her own right and as administratrix of her husband's estate against Mrs. Schlein in her own right and also as executrix of the estate of her husband. During the course of the trial Mrs. Schlein individually was dismissed from the case by consent of all parties.

The theory of plaintiff's case was that the second trust loan was in fact made by Schlein and was usurious. Recovery was sought of all interest paid. Code 1951, § 28–2704. The trial court found that Schlein was the purchaser of the note and denied recovery. The sole question before us is whether the trial court was justified in finding that Schlein was not in fact the lender. We have held more than once that it is not usurious to purchase a note at a discount. McDonald v. Stone, D.C.Mun.App., 86 A.2d 624; Krevait v. Turover, D.C.Mun.App., 39 A.2d 207.

The evidence developed these undisputed facts. Prior to the refinancing, Williams had several conferences with Elliott and also talked with Schlein whom he had known for years and with whom he had had business transactions. Williams and Elliott made at least one visit to Schlein's office. The Elliotts executed a note for $3,000 with interest at 6% payable to Williams and also executed a second deed of trust securing the note. Before the trust was recorded Williams wrote a letter to Schlein stating he was "holder" of a second deed of trust note made by the Elliotts and that he wished to sell the note to Schlein for $1,700 "net, to me." On the same day Schlein wrote a letter to the District Title Company enclosing a check for $1,700, stating the check was "purchase in full" for the $3,000 second trust note. The concluding paragraph of his letter stated: "You are at liberty to hand over said check to D. Patrick Williams when you can deliver to me the aforesaid note endorsed by D. Patrick Williams without recourse and also the recorder's receipt." Settlement was made at the title company and the first and second deeds of trust thereafter recorded. The title company settlement sheet credited the Elliotts with $3,000 for the second trust but charged them with the following items: "D. Patrick Williams 100" and "Discount on 2nd trust 1300."

It is abundantly clear that the Elliotts executed a note payable to Williams for $3,000, that Williams gave no consideration for the note but endorsed it without re-

course to Schlein who paid $1,700; and that the Elliotts received $1,600 and Williams $100. Is there any reasonable basis for a finding that Schlein in fact was not the lender but was a purchaser in good faith? It is true that there was a purported offer to sell by Williams and a purported acceptance of that offer by Schlein, but to take this offer and acceptance at face value would be to ignore the realities. "A common device to conceal usury is the pretended bona fide purchase of a note at a large discount." Hill v. Hawes, 79 U.S. App.D.C. 168, 169, 144 F.2d 511, 512.

It is inconceivable that Schlein believed he was purchasing a note which had been previously negotiated for value to Williams. Schlein's letter to the title company clearly indicates his knowledge of the proposed refinancing and his knowledge that the second deed of trust had not then been recorded. At that time he knew there was no second deed of trust note for Williams to sell or for him to purchase. He simply agreed that when such a note came into existence he would pay $1,700 for it. We think the conclusion is inescapable that Schlein knew his money was going to the Elliotts and that Williams was an intermediary whose only interest was to obtain a commission for negotiating the loan. The pretense of buying the note from Williams was nothing more than an attempt to cover up a usurious loan. See Meredith v. Cabell, D.C.Cir., 1954, 211 F.2d 810. "Where the first negotiation of a promissory note is an exchange of it for money at a usurious rate of 'discount,' to one who knows the instrument had not acquired validity by a previous transfer for value from maker to payee, the transaction is considered a usurious loan, and not a sale." Fidelity Security Corp. v. Brugman, 137 Or. 38, 1 P.2d 131, 136, 75 A.L.R. 1333, 1340. See also 55 Am. Jur., Usury, § 27; 66 C.J., Usury, § 88.

Reversed with instructions to enter judgment for plaintiffs against Rose Schlein, executrix of the estate of Maurice J. Schlein, deceased, for all amounts paid in excess of $1,700.