Mary W. **ROYALL**, Appellant,

v.

**Louis YUDELEVIT and William H.** Simons, Appellees.

No. 14608.

United States Court of Appeals District of Columbia Circuit.

Argued March 20, 1959.

Decided June 4, 1959.

Mr. Arthur L. Willcher, Washington, D. C., for appellant.

Mr. Morton Willcher, Washington, D. C., also entered an appearance for appellant.

Mr. Ernest M. Shalowitz, Washington, D. C., with whom Mr. Sol M. Alpher, Washington, D. C., was on the brief, for appellee Yudelevit.

Mr. Louis E. Spiegler, Washington, D. C., also entered an appearance for appellee Yudelevit.

Mr. Maurice Friedman, Washington, D. C., for appellee Simons.

Before Mr. Justice BURTON, retired,* and PRETTYMAN, Chief Judge, and WILBUR K. MILLER, Circuit Judge.

WILBUR K. MILLER, Circuit Judge.

Mrs. Mary W. Royall brought this suit against Louis Yudelevit and William H. Simons to recover damages for wrongful foreclosure.[1] The evidence at the trial tended to show that for many years Mrs. Royall had owned valuable real estate at 18th and Que Streets in the District of Columbia. In 1955, when the property was subject to a first trust of approximately $100,000, she was elderly and, due to illness and the recent death of her husband, mentally incompetent to realize the value of her property or to understand financial transactions. Being in need of funds, she employed an attorney to obtain an additional loan on her realty. He discussed the matter with Yudelevit, who said he would pay $8,500 for a 90-day note for $10,000 secured by a second deed of trust on the real property. The attorney then had Mrs. Royall execute a note for $10,000 and a second deed of trust securing its payment to one William Bogen, a straw party. Bogen endorsed the note and deed of trust to Yudelevit who delivered the agreed sum of $8,500. Of this amount Mrs. Royall had to pay $50 to Bogen for his services and $700 to her attorney for arranging the loan. From this evidence the jury would have been justified in inferring that Yudelevit was the real lender.[2]

Yudelevit immediately sold the note to William H. Simons for $9,000. Upon default at maturity, Simons caused the trustees under the second deed of trust to sell the realty at public auction. The sale produced only about enough to pay the first and second trusts, so the result was that Mrs. Royall's alleged equity of from $90,000 to $100,000 was eliminated.

Mrs. Royall alleged that Yudelevit and Simons were both engaged in lending money at usurious rates without having obtained a license to do so under § 26–601, D.C.Code (1951). Her theory was that, because Yudelevit and Simons were unlicensed when the former made the loan, the note and the deed of trust securing it were unlawful and void; that therefore the foreclosure was illegal, and that she suffered damages as a result thereof.

---

* Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code.

1. Originally there were two other defendants but Mrs. Royall dismissed the complaint as to them.

2. If Yudelevit should be found to be an innocent purchaser for value before maturity without notice of any infirmity or defense, the fact that he bought the note for less than its face value would be immaterial.

Yudelevit and Simons claimed to be innocent purchasers of the note for value before maturity, without notice of any infirmity in it or defense to it. They also alleged that when Weitzman, a purchaser after the foreclosure sale, resold the property, Mrs. Royall joined in the conveyance and received a part of the sale price; this, they said, estopped her to assert a claim against them.

The trial judge limited Mrs. Royall's evidence to prima facie proof of a usurious transaction and thus would not permit her to show the appellees should have been but were not licensed under the statute. He said the question of damages would be taken up later if necessary. At the conclusion of her evidence the judge held in effect that a borrower who has paid usury may not recover from the lender the damages he claims to have sustained from the transaction, even though the loan contract was unlawful and unenforceable because the lender was subject to § 26–601 and had not obtained a license thereunder. He held that the illegality of the contract may be used by the borrower as a shield against its enforcement but not as a sword to recover damages against the lender.

Being of the view therefore that, even if a usurious loan contract were established by the evidence and even if Yudelevit and Simons were shown to have been violating the statute and interposed no defense to the action, Mrs. Royall could not recover damages alleged to have been caused by the foreclosure, the trial judge directed a verdict in favor of Yudelevit and Simons. Mrs. Royall appeals.

■ The first question is whether Mrs. Royall should have been permitted to introduce evidence to show that the appellees were doing business in violation of the statute, which is colloquially known as the Loan Shark Law of the District of Columbia, § 26–601, and which makes it "unlawful and illegal to engage in the District of Columbia in the business of loaning money upon which a rate of interest greater than six per centum per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license * * *."

In Hartman v. Lubar, 1942, 77 U.S. App.D.C. 95, 133 F.2d 44, 45, Hartman and another borrowed approximately $900 from Orleans and gave in return a promissory note for $1,000 secured by a chattel deed of trust. Orleans endorsed the note to the District Finance Corporation. Thereafter Lubar, as trustee under the deed of trust, sued in replevin to recover the pledged chattels. During the trial Hartman offered to prove that Orleans was the principal stockholder and president of the District Finance Corporation, and that the loan was actually made by the corporation, which was engaging in the business of lending money in the District of Columbia at an interest rate greater than six per cent without having procured the license required by the statute. The trial court excluded the offered evidence and directed a verdict for the defendants.

In the course of our opinion reversing this action, we said:

" * * * The general rule is that an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer. The present case comes under no exception to the general rule. Every consideration of public policy suggests that a contract made in violation of the Loan Shark Law should be unenforceable."

Later in the Hartman opinion we said: "The evidence offered was competent, therefore, to show the illegality of the transaction *and the resulting absence of title in the trustee,* upon which appellee based his right to possession." (Emphasis supplied.)

■■ Thus we held that a usurious loan contract with a lender who is violating the statute is illegal and void and that proof of such violation should have been received; and that a deed of trust

which is a product of such a void contract confers no title upon the trustees designated therein. We adhere to the views expressed in Hartman v. Lubar and hold that a borrower, who enters into a usurious contract which is void because the lender was violating the statute, may recover from the lender any damages sustained by reason of the void contract. A lender in a loan contract which is merely usurious may not be liable in damages. But if there is added to the situation the fact that the lender was not licensed as required by law, the loan contract is unlawful and void, and a foreclosure thereunder is wrongful and gives rise to an action for damages suffered therefrom.

Being a borrower, Mrs. Royall was a member of the class for whose protection the statute was enacted. She was therefore not *in pari delicto* with Yudelevit and her participation with him in its making did not bar her from asserting its illegality. Thomas v. City of Richmond, 1870, 12 Wall. 349, 355, 79 U.S. 349, 355, 20 L.Ed. 453; City of Parkersburg v. Brown, 1882, 106 U.S. 487, 503, 1 S.Ct. 442, 27 L.Ed. 238; Ring v. Spina, 2 Cir., 1945, 148 F.2d 647, 652–653, 160 A.L.R. 371.

It follows that, if the transaction was a usurious loan by Yudelevit and if he was violating the statute by failing to obtain a license, the note and the second deed of trust were void; and, having made the foreclosure possible by transferring the void note and deed of trust, he is liable for the damages resulting from Simons' foreclosure (even if the latter was innocent throughout) unless he can establish an adequate affirmative defense.

If Simons took the note and deed of trust with notice or knowledge that Yudelevit had obtained them through a usurious loan contract made when he was violating the statute, then Simons unlawfully caused the foreclosure and is liable for any damages caused thereby, unless he can establish an adequate affirmative defense. As to Simons, the question is, not whether he was unlicensed, but whether he was a holder in due course.

Mrs. Royall had the right to elect whether to go into equity and ask that the sale be set aside, or to let the sale stand and ask for damages. Rogers v. Barnes, 1897, 169 Mass. 179, 47 N.E. 602, 38 L.R.A. 145; Missouri Real Estate Syndicate v. Sims, 1904, 179 Mo. 679, 78 S.W. 1006; Aultman & Taylor Co. v. Meade, 1905, 121 Ky. 241, 89 S.W. 137; Warren v. Susman, 1915, 168 N.C. 457, 84 S.E. 760; Burnett v. Dunn Commission & Supply Co., 1920, 180 N.C. 117, 104 S.E. 137; Sandler v. Silk, 1935, 292 Mass. 493, 198 N.E. 749; Peterson v. Kansas City Life Ins. Co., 1936, 339 Mo. 700, 98 S.W.2d 770, 108 A.L.R. 583; Black v. Burd, Tex.Civ.App.1953, 255 S.W.2d 553. As the property had passed into the hands of another who may have been quite innocent, Mrs. Royall properly elected to seek damages, for "Such a suit for damages at law is an especially appropriate remedy where an innocent purchaser buys at foreclosure, because it gives relief against the guilty rather than the innocent party." Peterson v. Kansas City Life Ins. Co., 98 S.W.2d at page 775.

We conclude that Mrs. Royall should have been allowed to prove, if she could, that the transaction was a usurious loan to her by Yudelevit, that Yudelevit was at the time in violation of the loan shark statute, and that she suffered damages as a result of the foreclosure. Such proof, standing alone, would authorize the jury to return a verdict awarding appellant damages against Yudelevit. He and Simons should be permitted then to introduce evidence tending to show they were innocent transferees, or to establish any other defense they may have. If the jury should find against Yudelevit, and should also conclude from the evidence that Simons took the note and deed of trust with notice of the circumstances in which Yudelevit acquired them, a verdict for damages against Simons also would be warranted.

It follows that the District Court erred in directing a verdict for Yudelevit and Simons. We express no opinion as to the validity of the defense of estoppel. The judgment is reversed and the cause remanded for a new trial in accordance with this opinion.

So ordered.