**INDIAN LAKE ESTATES, INC.,**
Appellant,

v.

**TEN INDIVIDUAL DEFENDANTS,** Net Limited, Inc., and Special Investments, Inc., Appellees.

No. 18586.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 9, 1964.

Decided Aug. 4, 1965.

Petition for Rehearing Denied
Oct. 7, 1965.

Mr. Ralph E. Becker, Washington, D. C., with whom Mr. F. Murray Callahan, Washington, D. C., was on the brief, for appellant.

Mr. David G. Bress, Washington, D. C., with whom Mr. J. H. Krug, Washington, D. C., was on the brief, for appellees Ten Individual Defendants and Net Limited, Inc.

Mr. Albert Philipson, Washington, D. C., was on the brief for appellee Special Investments, Inc.

Before WILBUR K. MILLER, Senior Circuit Judge, and FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge:

We earlier reversed a judgment which had been entered in favor of the appellees in Indian Lake Estates, Inc. v. Lichtman.[1] We then deemed "not susceptible of disposition by summary judgment" the appellant's claims that the appellees had violated the usury statute, D.C. CODE § 28–2703 (1961), "by charging interest in excess of 8%" and the so-called "Loan Shark Law," D.C.CODE §§ 26–601 to 26–611 (1961), "by lending money without a lender's license." After further proceedings in the District Court, the appellant's second amended complaint was dismissed, and this appeal followed.

Following remand, the appellant had filed an amended complaint. It was alleged that the appellees, who include two corporations and ten individuals, between 1955 and 1959 had participated with the appellant through various joint venture groups in some 17 business dealings having nexus with the District of Columbia. The appellant asked the District Court to declare that the transactions had required usurious payments and that the individual appellees should be caused to pay to the appellant usurious interest in the amount of $1,291,000. The appellant also prayed that the court declare its entitlement to recoup the total principal of various "void and illegal loans" in the amount of $2,125,819.31. The several transactions had involved participation by the respective parties in financing large real estate development projects organized by the appellant. The appellant additionally had asked the District Court to declare the two corporate appellees [2] "to be the alter ego of the individual defendants"; that certain assignments of land purchase contracts to the corporate appellees be declared void; and, finally, that the principal of the allegedly void loans "be forfeited by the individual appellees and remitted" to the appellant.

The respective appellees answered in March, 1963, setting up various defenses and counterclaims. The ten individual appellees and the appellee, Net Limited, Inc., represented by Mr. Bress, counterclaimed in part for damages aggregating $250,000. The appellee, Special Investments, Inc., represented by Mr. Albert Philipson, counterclaimed in part for damages of $953,000. At that time

1. 114 U.S.App.D.C. 90, 311 F.2d 776 (1962).

2. The business address of both corporate appellees and of appellee Robert A.

Philipson was listed in the complaint as "1925 K Street, N.W. Suite 201–6, Washington, D.C."

D.C.CODE § 29–904(h) (1961) of the "District of Columbia Business Corporation Act," 68 Stat. 177 (hereinafter referred to as the 1954 Act), provided that a corporation had power "to borrow money at such rates of interest as the corporation may determine without regard to the restrictions of any usury law * * *." Appellees have pointed to the legislative history of the 1954 Act and of the 1963 amendments which we have examined in detail.

It appears that on April 11, 1963, a Subcommittee of the House Committee on the District of Columbia conducted hearings on H.R. 4330 respecting certain proposed amendments to the 1954 Act.[3] In due course, as of September 3, 1963, Public Law 88–111, 77 Stat. 136, was approved. Pertinent here, D.C.CODE § 29–904(h) (1961) was thereby amended by adding a new sentence:

> "No corporation formed hereunder shall plead any statutes against usury in any action." (D.C.CODE § 29–904(h) (Supp. IV, 1965.))[4]

On September 13, 1963, the appellees joined in filing a motion to dismiss on the ground that the complaint had failed to state a claim upon which relief could be granted. The motion recited, in pertinent part,

> "The action is for alleged usury. By reason of the District of Columbia Business Corporation Act, D.C. Code Secs. 29–904(h) and 29–933a, plaintiff corporation cannot assert usury, as more fully set forth in the memorandum in support hereof." [5]

The appellant's opposition to the motion to dismiss, filed September 27, 1963, relied upon this court's earlier opinion and order, *supra,* and asserted further that the 1963 amendment applied only to corporations "formed hereunder." [6] It argued that since the appellant is a foreign corporation, its rights did not depend upon the provisions of the Business Corporation Act of the District of Columbia.

Such was the state of the record when the "first judge" on November 27, 1963 heard argument on the appellees' motion to dismiss the complaint.[7] Orally the judge announced his "opinion that the action in this case is barred by the stat-

---

3. Attorney Albert Philipson then testified representing the Bar Association of the District of Columbia "which is sponsoring H.R. 4330." He filed a statement and explained that section 1 of the bill would add a sentence to section 4(h) of the 1954 Act, *supra,* "to the effect that corporations may not plead usury, thus making clear the meaning of section 4(h) which provides that corporations may 'borrow money at such rates of interest as the corporation may determine without regard to the restrictions of any usury law.'" His testimony throughout referred only to pending amendments to the 1954 Act.

4. While the language "formed hereunder" on its face applies to domestic corporations, D.C.CODE § 29–933a (1961), provides that a foreign corporation which shall have received a certificate of authority under the Act shall until a "certificate * * * of withdrawal shall have been issued" enjoy the same rights and privileges as, but no greater rights and privileges than, a domestic corporation. The section further provides that a foreign corporation having qualified to transact business within the District "shall be subject to the same duties, *restrictions,* penalties, and liabilities *now or hereafter imposed upon a domestic corporation* of like character." (Emphasis added.)

5. The supporting memorandum mentioned in the motion pointed to the amendment in Public Law 88–111 and quoted from the congressional committee reports as follows:

   > "Section 1 of the bill amends section 4(h) of the Act by providing expressly that corporations organized under the act may not plead usury. This defines more clearly the intent of the present statute which provides that corporations may borrow money 'without regard to the restrictions of any usury law.'"

   See also, Alpern, *Usury as to the Corporate Borrower in the District of Columbia,* 29 D.C.Bar Journal 196 (1962); Philipson, *The New District of Columbia Business Corporation Act,* 21 D.C.Bar Journal 499, 588, 592, 593 (1954).

6. *Supra* note 4 and related text.

7. The previous day appellant had filed its "Supplemental Memorandum" contending that section 29–933a accorded a foreign corporation the same status as a domestic

ute." An order was entered on December 3, 1963 granting the motion to dismiss, but "with leave to amend within 20 days." A further order on December 19, 1963 extended the time within which an amended complaint might be filed to January 2, 1964.[8]

The appellant's "second amended complaint" was filed on January 2, 1964. Its allegations were unchanged from those of the first amended complaint except that appellant this time *pleaded* that the appellant is a Florida corporation which

"was authorized to and did conduct business in the District of Columbia until plaintiff applied for and was issued, on June 9, 1960, a Certificate of Withdrawal by the Superintendent of Corporations pursuant to the provisions of Title 29, § 933(a) [*sic*]."[9]

The appellees then filed their "Joint Motions * * * to Dismiss * * *" asserting as "the law of the case" that the second amended complaint failed to state a valid claim. That motion was argued before a "second judge" on March 23, 1964 and was granted. The second judge in ruling stated:

"I want the order to show that the matters raised by the Second Amended Complaint were raised, argued, and decided by another judge of this court and that this is virtually a motion for a rehearing before me when it should be before the other judge."

The order entered March 24, 1964 recited "that all relevant issues" had been "raised and argued before" the first judge who had "granted the joint motion" of the appellees "to dismiss for failure to state a claim, and that the Second Amended Complaint presents no issues not decided" by the first judge. This appeal was taken from that order.

## I

The appellees say at once that this appeal was not timely, not having been taken within 30 days of the December 3, 1963 order. They contend we must dismiss the appeal for lack of jurisdiction. We do not agree that all "relevant issues" had been raised and argued before the first judge. Nor was the December 3 order dispositive as "the law of the case," for the appellant had been granted leave to file its second amended complaint.

Filed within the time allowed, the second amended complaint placed before the second judge, *on the pleadings*,[10] an issue as to whether or not a foreign corporation previously qualified, possessed different status when it actually filed in advance of suit a certificate of withdrawal as permitted by section 29–933a. The first judge had filed no opinion. He simply stated "I am of the opinion that the action in this case is barred by the statute, and I will grant the motion to dismiss."

There is no suggestion whatever that the consequences of the fact of withdrawal had been put in contention before the first judge. Counsel for the appellees had made no mention of the significance of the withdrawal of the appellant as a foreign corporation or the effect to be attributed to the purported change of status.[11]

corporation *only* until a certificate of withdrawal "shall have been issued." Appended as an exhibit was a certified copy of a certificate of withdrawal issued to Indian Lake Estates, Inc. as of June 9, 1960, some four months before the instant action had been commenced.

8. Pursuant to FED.R.CIV.P. 54(b), the order also provided that there "is no just reason for delay with respect to the order herein of December 3, 1963." The appellant did not appeal from the December 3 order.

9. For D.C.CODE, § 29–933a (1961) as pertinent here, see note 4 *supra*.

10. Cf. Richardson v. Rivers, 118 U.S.App. D.C. 333, 335, 335 F.2d 996, 998 (1964).

11. The first judge filed no written opinion, and the record does not show whether or not he considered, or how he interpreted, D.C.CODE § 29–934d (1961) which provides:

"The revocation of certificate of authority or the *voluntary withdrawal*

Rather, the record shows the appellees were contending that D.C.CODE § 29–904 (h) (1961) as set out in the 1954 Act and as amended in 1963 had barred the action. Specifically counsel submitted:

> "So we say it has been the law since 1954 but clearly since September 1963. No corporation in the District of Columbia may now plead usury under any usury statute either as a shield or as a weapon."

The first judge observed: "The only question before me is whether or not your cause of action is barred by the statute." [12]

Such was the background against which the first judge decided that "the action in this case is barred by the statute." And so it is we conclude that the second judge erred in ruling that all "relevant issues" [13] had been raised and disposed of by the December 3, 1963 order. The second amended complaint presented on the pleadings a quite different issue as to the status of the appellant, and the order entered March 24, 1964 dismissing the complaint was a final and appealable order. [14] The appeal taken

April 9, 1964 was timely, and this court has jurisdiction of the case. [15]

## II

We come at once to D.C.CODE § 29–904 (h) (1961), as amended, D.C.CODE § 29–904(h) (Supp. IV, 1965), and its application to the claim of usury. [16] The pertinent language thus appears:

> "Each corporation shall have power:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "(h) To make contracts and incur liabilities; to borrow money at such rates of interest as the corporation may determine *without regard to the restrictions of any usury law;* \*　\*　\*. *No corporation formed* hereunder shall plead any statutes against usury in any action." (Emphasis added.)

As previously noted, appellant had contended that the amendment could have application only to corporations "formed hereunder." Here, however, this appellant as a Florida corporation had procured a certificate of authority to transact business in the District. It may even have sought to qualify in the first in-

---

*of a foreign corporation* whereby its authority to do business in the District shall cease and be determined, shall not affect any action then pending, *nor affect any right of action upon any contract* made by the corporation in the District *before such* \* \* \* *withdrawal* \* \* \*." (Emphasis added.)

12. Undoubtedly with the possibility of a Richardson v. Rivers situation in mind, *supra* note 10, the first judge had earlier expressed concern as to the posture of the case in view of this court's opinion, *supra* note 1, that *summary judgment* should not have been entered. Appellees' counsel then assured him that a corporation's "right to sue for usury was not argued in any way." There is no suggestion that the judge considered or took into account matter outside the pleadings. Cf. Gager v. "Bob Seidel", 112 U.S.App.D.C. 135, 139, 300 F.2d 727, 731, cert. denied, 370 U.S. 959, 82 S.Ct. 1612, 8 L.Ed.2d 825 (1962).

13. He stated "I want the order to show that the matters raised by the Second Amended Complaint were raised, argued, and decided by another judge of this court." Of course, he need not have been bound in any event. Cf. Dictograph Products Company v. Sonotone Corporation, 230 F.2d 131, 134–136, rehearing denied, 231 F.2d 867 (2 Cir.), petition for cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956).

14. Marotta v. Milestone, 114 U.S.App.D.C. 237, 314 F.2d 242 (1963).

15. Cf. Slater v. Peyser, 91 U.S.App.D.C. 314, 200 F.2d 360 (1952).

16. D.C.CODE § 28–2703 (1961) defines usury and provides that the creditor under the usurious contract "shall forfeit the whole of the interest so contracted to be received; *Provided*, That nothing in this chapter contained shall be held to repeal or affect sections 26–601 to 26–611." [Chapter 6—Money Lenders—Licenses, the "Loan Shark Law," *infra* note 23.] And see as to damages, Searl v. Earll, 95 U.S.App.D.C. 151, 156, 221 F.2d 24, 29 (1954).

stance on the theory that it then would be able during the period of 1955 to 1959 "to borrow money at such rates of interest as the corporation may determine without regard to the restrictions of any usury law." When it received its certificate of authority, by virtue of section 29–933a it became possessed of "the same rights and privileges as, but no greater rights and privileges than, a domestic corporation."

Chapter 27 [17] of the District of Columbia Code deals generally with "Interest and Usury." Parties to written contracts may provide for interest not exceeding eight per centum, but if a corporation shall agree to pay a greater rate, the *creditor* shall forfeit the "whole of the interest so contracted to be received." [18] A corporation which actually shall have paid a "greater amount of interest than is herein declared to be lawful" may recover "the unlawful interest" from the creditor if suit be commenced within one year from the date of payment.[19] Yet other provisions of the Chapter dealt with various aspects of the "Interest and Usury" problem, including an express provision that as to contracts made or to be performed elsewhere wherein lawfully a higher rate of interest may be paid "than is lawful in the District," a judgment for a plaintiff shall include the *contract* rate to the date of judgment.[20]

Such were the provisions affected when the 1954 Act in section 29–904(h) permitted corporate borrowing "without regard to the restrictions of any usury law."

The 1954 Act had not repealed earlier legislation affecting corporations in the District, nor did it in terms repeal the usury statutes as applicable to corpora-

tions. But enlarging a corporation's power to borrow without regard to lawful interest rates was clearly inconsistent with the usury statutes which permitted suit by the corporate borrower and recovery from the lender of "the whole of the interest" as contracted for.

Congress in the 1954 Act had permitted a corporation to seek financing here on whatever terms it might arrange. We can not believe it was intended that a foreign corporation might seek authorization to do business here, become a borrower in the District, accept the benefits of the legislation, thereafter withdraw from the District, and at the same time be freed from the detriments of its contract.

On the contrary, D.C.CODE § 29–934d (1961) provided that even if a certificate of withdrawal be filed by a foreign corporation, "in any action upon any liability or obligation so incurred before \* \* \* withdrawal," process might be served upon the Commissioners.

In such circumstances Congress passed the 1963 amendment. Whatever other rights and duties might have devolved upon the parties to the contract, Congress simply said "statutes against usury" were not to be pleaded.

Since this appellant had gained its authority to do business in the District under the 1954 Act, by virtue of section 29–933a it became subject to all "restrictions" and otherwise as might be "now or hereafter imposed upon a domestic corporation of like character." [21]

▮▮ The filing of the certificate of withdrawal, we are now satisfied, could not change the status appellant's contracts had acquired prior thereto. The 1963 amendment to section 29–904(h)

---

17. · D.C.CODE §§ 28–2701 to 28–2709 (1961), since recodified with changes in D.C.CODE §§ 28–3301 to 28–3306 (Supp. IV, 1965).

18. *Supra* note 16.

19. D.C.CODE § 28–2704 (1961).

20. D.C.CODE § 28–2709 (1961); and see *supra*, note 17. We mention this reference only because one of the contracts al-

legedly entered into between the parties here had involved Florida law. And see Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407, 408, 47 S.Ct. 626, 71 L.Ed. 1123 (1927).

21. Compare D.C.CODE § 29–934f respecting restrictions upon suit by a foreign corporation transacting business here which had failed to procure a certificate of authority.

simply clarified the applicable law so far as the usury statutes were involved. The complaint to recover usurious interest was barred by the statute.[22]

### III

We now consider a quite different problem, for the appellant additionally had relied upon D.C.Code §§ 26-601 to 26-611, sometimes known as the Loan Shark Law.[23] It is a licensing statute.[24] In Hartman v. Lubar [25] this court held that a usurious loan contract with a lender who was violating the licensing statute was illegal and void and that proof of the claimed violation should have been received. Thus, a borrower who had entered into a usurious contract, void because the lender was violating the statute, was entitled to recover from the lender any damages sustained by reason of the void contract.

The effect of a failure to comply with the licensing statute was again considered in Royall v. Yudelevit.[26] This court then pointed out that a right of action for damages may flow from a loan which is (1) usurious and (2) granted by an unlicensed lender. Merely to state the appellant's claim in broad terms may suggest it need prove only that the appellees were engaged "in the business of loaning money" without complying with the requirements of the licensing statute and had here entered into loans under which usurious interest had been exacted, as the result of which the appellant had suffered damage. It is clear, however, that this court's holding in the Royall case may apply only if the appellees cannot establish an adequate, affirmative defense. We express no opinion whatever on the purported merits to the extent pleaded of record. Even so, the appellees would have us say that since one of the elements of such a claim involves proof of usury, section 29-904(h) as amended would bar the appellant's claim in any event.

We are not persuaded to that view. The District of Columbia Business Corporation Act is totally unrelated to the licensing statute now under consideration. The two statutes serve utterly different purposes. It would seem indisputable from the legislative history and from our cases that the Business Corporation Act and the law governing licensed lending [27] are independent legislative acts.

Congress has said, as here apropos, that a corporation may fund itself on any basis it determines but may not plead usury thereafter, supra, Part II.

It has likewise said that engaging in the business of lending money without

---

22. Tennant v. Joerns, 329 Ill. 34, 160 N.E. 160 (1928).

23. D.C.Code § 26-601 (1961) provides in pertinent part:
"It shall be unlawful and *illegal to engage* in the District of Columbia *in the business of loaning money* upon which a rate of interest greater than six per centum per annum is charged on any security of any kind * * * *without procuring license* * * *." (Emphasis added.)

24. This court so held in Reagan v. District of Columbia, 41 App.D.C. 409, explaining at 412 (1914):
"This is not a usury statute as applied to the regulation of interest charges for the use of money in legitimate commercial transactions, but an act licensing, under limitations and restrictions, the loaning of money in small sums upon personal security."

Once a license shall have been issued to a qualified and complying money lender, interest charges are to conform to D.C. Code § 26-605 (1961).

25. 77 U.S.App.D.C. 95, 96-97, 133 F.2d 44, 45-46 (1942), cert. denied, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943). The court there further pointed out that § 26-601, *supra* note 23, was intended to be read together with § 28-2703, *supra* note 16. It should be noted that the usury statute *explicitly* provides that *nothing* in the usury chapter shall affect the provisions here considered.

26. 106 U.S.App.D.C. 1, 4, 268 F.2d 577, 580 (1959).

27. And the usury statutes do not "affect" the licensing statute. See notes 16 and 25, *supra*.

being licensed to charge permitted rates is unlawful and illegal. And we have said that contracts illegally entered into under such circumstances are void, and that damages flowing from that type of transaction may be recovered unless the lender "can establish an adequate affirmative defense." [28]

There was error in dismissing the appellant's complaint insofar as it stated a claim as discussed in Part III of this opinion.

Reversed.

WILBUR K. MILLER, Senior Circuit Judge, concurs in Parts I and III of the foregoing opinion, and concurs in the result reached in Part II.

---

28. Royall v. Yudelevit, *supra* note 26.