Ernest S. MITZNER,

v.

William C. BAYLIES and Sofrona F. Baylies, Appellants.

No. 22907.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1970.

Decided April 2, 1970.

Petition for Rehearing Denied April 30, 1970.

Mr. Landon G. Dowdey, Washington, D. C., for appellants. Mr. Stuart H. Ro-

beson, Washington, D. C., was on the brief, for appellants.

Mr. Jacob Sheeskin, Washington, D. C., with whom Mr. Jack A. Hillman, Washington, D. C., was on the brief, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and JAMESON,* Senior Judge.

McGOWAN, Circuit Judge:

Appellee sued in the District Court to recover a deficiency in the amount realized by him on the foreclosure of a second deed of trust securing appellants' note. Judgment was entered for appellee on a jury award of $12,567.11. At the close of appellee's case, appellants moved for a directed verdict on the grounds that (1) appellee's own showing revealed the transaction to be a usurious loan, as distinct from a *bona fide* purchase of a note, and (2) the transaction was void because it occurred in a course of dealing by appellee as an unlicensed money lender. The motion was denied. We hold that this was error by reference to the first such ground.

I

In April, 1966, one Reiss telephoned Irving Kamins, a real estate agent, and reported the availability for purchase of a $12,500 promissory note secured by a second deed of trust on three properties in the District of Columbia. Kamins inquired with respect to the properties, the asking price for the note, and the commissions. The makers, appellants here, were said to have set a price of $11,000; and Reiss and Kamins were to divide a $1,000.00 commission payable by appellants. Kamins approached appellee, who expressed an interest in purchasing the note, subject to a satisfactory title search by his own attorney.

That search revealed that there was no second trust of record; and it is undis-puted that no note was in existence at that time. Reiss suggested that appellee's attorney, Mr. Sheeskin, prepare the note and trust deed; and this was done by the preparation in Mr. Sheeskin's office of a note naming his secretary, Miss Ferguson, as payee. The note was made payable on October 20, 1966, and purported to bear interest at a 6% annual rate. It was accompanied by a printed form deed of trust naming Mr. Sheeskin as one of the trustees. The note was endorsed by Miss Ferguson immediately and transferred to appellee who drew a check to the order of Sheeskin in the amount of $11,000.

Miss Ferguson at no time paid any money to appellants, and it was stipulated that she received no consideration for transferring the note to appellee. Appellants received a check for $9,305.93 from Sheeskin.[1]

On the due date, October 20, 1966, appellants were unable to pay off the note. The following day a "Note Extension Agreement" was consummated wherein appellants were granted an additional six months (to April 20, 1967) and also granted the right to demolish structures on one of the three securing lots. At this time, appellants paid appellee $2,900.00. Of this sum, $375.00 represented accrued interest for the original term of the note, $25.00 was a fee to Sheeskin, and $2,500.00 was variously characterized as consideration to demolish the structure (appellee) or consideration for the six months' extension (appellants).

The note was not paid on April 20. After alleged verbal extensions, appellee instituted foreclosure proceedings in August 1967. Appellants informed appellee that a refinancing deal was pending on another piece of property and that, upon settlement, appellants would have ample funds to satisfy their undertakings. On September 12, 1967, appellee agreed to

---

* Sitting by designation pursuant to the provisions of Title 28, U.S.Code, Section 294(d).

1. The difference of $1,694.07 included the $1,000.00 commission to Kamins and Reiss, taxes, title search, and miscellaneous minimal charges.

postpone foreclosure until September 27 in return for an irrevocable assignment of $16,151.60.[2]

On September 26 appellants informed appellee that the refinancing transaction with respect to which the assignment had been made had collapsed. Appellants also informed appellee that still another refinancing was imminent, provided appellants could raise a standby fee of $1,750.00. Appellee agreed to advance these additional funds in return for a $2,750.00 30-day note and an additional assignment of $2,750.00.[3] This note was not paid on the October 26 due date and foreclosure proceedings began in earnest. On November 10, foreclosure was held, appellee realizing $3,721.28.

## II

▮ In discussing instructions with counsel prior to submitting the case to the jury, the transcript contains the following comment by the court:

"* * * [W]e might say that counsel have agreed that as to the basics here, that it would go to the jury on two bases, one, if the jury finds that this was a sale at discount as distinguished from a loan, the figure which the plaintiff would be entitled to would be $12,567.11; whereas, if the jury finds on the theory that this was a loan as distinguished from a sale the amount

2. The assignment, addressed to a title settlement firm, included the $12,500 principal balance, interest due on the note, approximately $2,000 of first trust arrearages on the securing properties, advertising expenses, and tax arrearages should foreclosure ultimately be required.

3. Appellee sent $1,750.00 to Mr. Sheeskin, who in turn paid the prospective financer, an insurance company, $1,725.00. The additional $1,000.00 was for what appellee termed "expenses," e. g., possible advertising, legal, and foreclosure fees.

4. The court was, in our view, correct in rejecting the other ground of the motion, namely, the assertion of the applicability

which would be recoverable would be $6,377.11"

The record does not elsewhere show any such stipulation by counsel, and the reference is apparently to off-the-record discussions at the end of the trial between counsel and court as to the instructions to be given. There is, thus, a threshold issue of whether the parties bindingly agreed to leave to the jury the determination of whether the transaction was usurious, with agreed alternative amounts of recovery by appellee to abide that determination. On the meagre record information before us, we are not justified in finding any relinquishment by appellants of their claim that a verdict should have been directed in their favor on appellee's own evidence. It appears, rather, to have been a stipulation that, if the court was insistent that the matter go to the jury over appellants' objection, the alternative computation of the awards should be as stated.

▮ The record shows quite clearly that appellants sought a directed verdict at the close of appellee's evidence on the ground that that evidence showed the transaction to be usurious.[4] It is also clear that the court denied that request because it considered the issue to turn on a question of fact properly resolvable by the jury.[5] To preserve their claim in this regard, appellants did not need to note a formal exception, Rule 46, Fed.R.

of the Loan Shark Act, 26 D.C.Code §§ 601–611, and the regulations issued thereunder. At the time the motion was made, and thereafter, the record fails to show that appellee engaged in any course of conduct amounting to a "holding out" that he was in the lending business. Such other issues as are raised on this appeal are also viewed by us as without merit.

5. "The Court: * * * I am assuming in the questions I am now putting to you that the note was a note as distinguished from a sale.

Mr. Sheeskin [appellee's counsel]: That is a factual issue.

The Court: Of course, and I think I demonstrated that by denying the motion."

Civ.P., and the record does not warrant our concluding that it was subsequently abandoned. We therefore examine its merits.

### III

█ In reaching the result we do in this case, we do not say there can never be a factual issue for the jury as to whether a transaction was a loan or a note purchase. *Compare* Royall v. Yudelevit, 106 U.S.App.D.C. 1, 268 F.2d 577 (1959). It has, indeed, often been held in this jurisdiction that the good faith purchase of a discounted promissory note in the ordinary course of business is not usurious. *See, e. g.*, McDonald v. Stone, 86 A.2d 624 (D.C.Mun.App.1952). Courts in the District of Columbia will, however, look through the formalities of a transaction to determine whether the purported sale of a note is in fact merely an artifice to disguise the exaction of usurious interest. *See* Hill v. Hawes, 79 U.S.App.D.C. 168, 144 F.2d 511 (1944). The degrees of visibility vary widely, and in appropriate circumstances the matter may properly be left for jury resolution.

In Elliott v. Schlein, 104 A.2d 418 (D.C. Mun.App.1954), a situation very similar to the one at hand was presented. Elliott, in financial straits, approached a broker for assistance in obtaining funds. The broker apprised Schlein that he was the "holder" of a $3,000.00 6% second deed of trust note and offered it for sale at $1,700.00. Schlein accepted and tendered his check to a title company for payment to the broker. The language of the Municipal Court of Appeals (now the D.C.C.A.) is instructive (at p. 420):

> It is inconceivable that Schlein believed he was purchasing a note which has been previously negotiated for value * * *. At [the time of the offer] [Schlein] knew there was no second

deed of trust note for [the broker] to sell or for him to purchase. He simply agreed that when such a note came into existence he would pay $1,700 for it. We think the conclusion is inescapable that Schlein knew his money was going to the Elliotts and that [the broker] was an intermediary whose only interest was to obtain a commission for negotiating the loan. The pretense of buying the note from [the broker] was nothing more than an attempt to cover up a usurious loan.

█ The facts as proved by appellee in the case before us are even more compelling. Appellee, after agreeing to buy what was represented to be a discounted note secured by a second trust, ordered a title search and discovered that no second deed of trust was in existence. His own attorney was at that point commissioned to prepare the note and mortgage. Appellee was either present or about to arrive at his own attorney's offices when the note was being made, and he knew that the putative payee-vendor was his attorney's secretary who had given no consideration for the note and who was to receive nothing for her endorsement and transfer of it.[6] There is literally nothing from which the jury could rationally infer that appellee did not understand himself to be lending money directly to appellants. And that kind of lending by an individual is inescapably subject to the usury laws of the District of Columbia.

The judgment appealed from is reversed, and the case is remanded to the District Court with instructions to enter judgment for appellee for the principal amounts advanced by him to appellants, less any monies heretofore repaid by them, including such payments as may have been designated as interest.

It is so ordered.

6. We find the slightly higher effective interest rate in the *Elliott* case to be irrelevant. In both situations the true cost of borrowing was substantially in excess of the legal maximum.